UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-cr-20081-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DARLI VELAZQUEZ-ARMAS,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** is before the Court upon Defendant Darli Velazquez-Armas's Motion for Modification of Sentence Pursuant to 18 U.S.C. 3582(c)(2), ECF No. [200] ("Motion"). The Government filed a Response in Opposition, ECF No. [203] ("Response"), to which Defendant filed a Reply, ECF No. [204] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

**I. BACKGROUND**

On January 30, 2007, agents from the Drug Enforcement Administration ("DEA") attempted to arrest Defendant for his involvement in a scheme conspiring to import, possess, and distribute more than 80 kilograms of cocaine. As the Court summarized in Defendant's habeas proceeding brought under 28 U.S.C. § 2255,[1] and in its Order on Defendant's Motion for Compassionate Release, ECF No. [185]:

> When agents attempted to arrest [Defendant], a high-speed car chase ensued through a residential area. [Defendant] ultimately abandoned his vehicle and fled on foot. He was later located by a police canine. During the chase, [Defendant]

---

[1] *Velazquez-Armas v. United States*, No. 07-20081-CR.

threw his cellular telephone out the car window, and it was recovered by the investigating agents. After his arrest, [Defendant] waived his *Miranda* rights and admitted participating in the conspiracy to retrieve 85 kilograms of cocaine. [Defendant] stated that he was supposed to pick up the cocaine from [his co-conspirator, Jose] Sandoval, hold onto it, and then deliver it to an individual identified by Sandoval. [Defendant] told DEA agents that Sandoval had agreed to pay him $40,000 for his participation. After [Defendant] confessed, he placed several recorded telephone calls to codefendant Sandoval under DEA supervision during which the cocaine shipment was discussed. Sandoval was eventually arrested on February 2, 2007, after which he admitted conspiring with [Defendant] and another to distribute 10 kilograms of the load during the two-day period that [Defendant] was cooperating with DEA. Sandoval stated that he and [Defendant] agreed to participate and be responsible for selling the cocaine and they also agreed to take a share of the profit from the sale.

On February 5, 2007, the government's request for pretrial detention was denied and a $1,000,000 corporate surety bond was set as the condition of [Defendant's] release. By Indictment returned on February 13, 2007, [Defendant] and his co-defendants Jose Sandoval and Orlando Gonzalez were charged with conspiring to import more than five kilograms of cocaine into the United States in violation of 18 U.S.C. § 963 (Count 1); importing more than five kilograms of cocaine into the United States in violation of 21 U.S.C. § 952(a) (Count 2); conspiring to possess more than five kilograms of cocaine with the intent to distribute in violation of 21 U.S.C. § 846 (Count 3); and attempting to possess more than five kilograms of cocaine with the intent to distribute in violation of 18 U.S.C. § 841(b)(1)(A)(ii) (Count 4). [ECF No. [7].[2]] On February 14, 2007, [Defendant] entered pleas of not guilty to the crimes charged and the trial was scheduled to commence on April 11, 2007. [ECF Nos. [10] & [23].] [Defendant] posted bond on February 21, 2007, and he was released from custody. [ECF No. [19].]

On or about March 10, 2007, [Defendant] fled the country,[3] a warrant was issued for his arrest on March 13, 2007, and he was considered a fugitive as of May 14, 2007. [ECF Nos. [27], [42], & [67].] He was ultimately located in Madrid, Spain. On June 4, 2007, officers with the Spanish National Police ("SNP") attempted to arrest [Defendant] as he drove away from a residence. During his flight, [Defendant] knocked an SNP officer off her motorcycle and fled the area on foot, leaving family members behind in the vehicle.[4] On August 10, 2007, SNP

---

[2] The citations in this excerpt are modified to reflect the docket entries in the instant case.

[3] On March 10, 2020, Defendant's electronic monitor indicated that he was not home. When pretrial services called Defendant's ex-wife, she falsely told the officer that she believed that Defendant was out cooperating with the DEA when, in truth, he had absconded. ECF No. [180-1] at 9.

[4] Additionally, "while he was fleeing from law enforcement . . . , he did so by driving the vehicles he was in at the time at an excessively high rate of speed . . . through predominantly residential neighborhoods, and in a manner that recklessly created a substantial risk of death or serious bodily injury to other persons. In fact, in one instance he swerved over a sidewalk nearly hitting a woman who was pushing a baby carriage." ECF No. [157] at 187:20-188:3.

> once again located [Defendant] in the Canary Islands. When Spanish law enforcement attempted to arrest [Defendant], he once again led Spanish police on an extended high speed chase. [Defendant] then jumped out of his vehicle, engaged police in a foot pursuit, attempted to carjack a motorcycle, and then jumped into the back of a moving truck before being forcibly subdued by an officer. During the struggle, [Defendant] attempted to take the officer's firearm. He was originally held on a provisional arrest request by the United States and eventually waived extradition. He was returned to the Southern District of Florida on October 16, 2007. [ECF No. [67].]

*Velazquez-Armas v. United States*, No. 07-20081-CR, 2011 WL 13301233, at *2-*3 (S.D. Fla. Feb. 25, 2011), *report and recommendation adopted*, No. 07-20081-CR, 2011 WL 13301232 (S.D. Fla. Sept. 30, 2011).

On December 13, 2007, after being extradited from Spain, Defendant pleaded guilty to all four counts charged in the Indictment without a plea agreement. ECF No. [79]. On September 17, 2008, the Court sentenced Defendant to a total term of imprisonment of 360 months, followed by a five-year term of supervised release. ECF No. [142]. In doing so, the Court employed a base offense level of 36, with no objection by either party. ECF No. [157] at 141:14-17. The Court applied multiple enhancements and sentenced Defendant with an adjusted offense level of 49. *Id* at 197:5-6. The Government requested a sentence of at least 360 months to comply with treaty obligations with Spain, where Defendant was extradited from. *Id*. at 197:15-21. In order to impose that sentence, the Court had to "go down from 49 to a 42 under advisory guidelines in order to get to 360 which would be at the bottom of the guidelines at that range." *Id*. at 209:1-3. The Court specifically stated:

> There is a very significant departure here which will occur which takes into account in my view the situation with the extradition from Spain and also to the extent that this defendant was helpful in the Sandoval aspect, but I don't give significant weight to that factor because in my view based on everything else that happened here, I believe from the preponderance of the evidence that that was calculated by this defendant in order to put himself in a position where he could as for a bond in this case.

*Id*. at 209:4-12. The Court imposed a sentence of 360 months imprisonment, five years supervised

3

release, and a $400.00 special assessment. *Id*. at 213:13-14.

Defendant filed the instant Motion seeking a reduction in sentence pursuant to 18 U.S.C. 3582(c)(2) because of the U.S. Sentencing Commission's implementation of Amendment 782, which provides for a retroactive 2-level reduction to Defendant's offense level. The Government responds that despite the 2-level reduction in his base offense level, Defendant's sentencing range has not changed from life and the Court lacks jurisdiction to alter Defendant's sentence. The Government also argues that even if the Court had jurisdiction to change Defendant's sentence it should not because the sentencing factors set forth in 18 U.S.C. § 3553(a) mitigate heavily against a sentence reduction.

## II. DISCUSSION

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir.

2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

When the district court considers a § 3582(c)(2) motion, it must apply a two-step approach. *Dillon v. United States*, 560 U.S. 817, 826 (2010). First, the court must determine if the defendant is eligible for relief under § 3582(c)(2), and if so, determine the "amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing." *Id*. at 827 (quotation omitted). The court must then decide whether to exercise its discretion to impose the newly calculated sentence under the amended Guidelines or retain the original sentence by considering the § 3553(a) factors. *Id*. "Where a retroactively applicable guideline amendment reduces a defendant's base offense level, but does not alter the sentencing range upon which his or her sentence was based, § 3582(c)(2) does not authorize a reduction in sentence." *United States v. Moore*, 541 F.3d 1323, 1330 (11th Cir. 2008).

Here, the retroactive amendment lowers Defendant's base level by two levels, reducing it from a base level of 36 to a base level of 34. That base level would still be subject to the 13 level enhancements. With the application of enhancements, Defendant's offense level would be reduced from Level 49 to Level 47. Any offense level greater than 43 is treated as an offense level of 43 and the advisory sentencing range is life. The record reflects that the variance in this case was granted in order to impose a determinate sentence at the recommendation of the Government in order to comply with treaty obligations with Spain, from which Defendant was extradited. While the Court noted Defendant's cooperation, it indicated that significant weight was not given to that factor. *See* ECF No. [157] at 209:4-12.

Because the Amendment would not alter the sentencing range upon which Defendant's sentence was based, and the record reveals that a greater downward variance would not have been applied, Amendment 782 does not authorize a reduction in Defendant's sentence.

Case No. 07-cr-20081-BLOOM

In his Reply, Defendant requests that Court seal ECF Nos. [200]-[205]. *See* ECF No. [204].

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

**1.** Defendant's Motion, **ECF No. [200]**, is **DENIED** except to the extent that Defendant requests certain docket entries be sealed.

**2.** The Clerk of Court is directed **to permanently seal ECF Nos. [200], [203], and [204]**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 10, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Darli Velazquez-Armas
Reg. #78371-004
Federal Correctional Institute McDowell
P.O. Box 1009
Welch, WV 24801